## Gordon *v.* State Farm Life Insurance Company, Appellant.

Argued March 26, 1964. Before BELL, C. J., MUS-MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas F. Weis,* with him *Weis & Weis,* for appellant.

*James B. Ceris,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, September 15, 1964:

Larry Robert Gordon, 21 years of age, carried an accident insurance policy which would entitle the named beneficiary therein, in the event of his death, to $10,000 plus $10,000 additional if his death was the result "directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means as evidenced by a visible contusion or wound on the exterior of the body."

At about 4:00 a.m. on September 30, 1959, the insured was found dead to the rear of his automobile in a muddy field. The insurance company, after application therefor had been made by Gordon's widow,

refused to pay the additional $10,000 indicated in the policy. In the ensuing legal action the court below, sitting without jury, found in favor of the plaintiff and the defendant company appealed.

Larry Gordon was in excellent health prior to his death. The post mortem revealed that he bore no inner latent pathological clock ticking off his moments of mortality. There was evidence, on the other hand, that he was swept off the highway of life by the gasoline phantom which swings its fatal scythe with remorseless continuity, gathering in the old and the young, the male and the female every day, every month, every year.

There was evidence that Gordon's car left the highway, fell 33 feet down an embankment, spurted 14 feet, capsized and then regained its wheels. The motor of the car was still running when the decedent's body was found. There was evidence that the decedent made efforts to extricate his car from the soft earth in which its wheels had sunk because tire marks told their story of the car being driven in successively various directions for short distances.

The plaintiff produced two doctors who testified, in answer to hypothetical questions, that, in their opinion, Gordon's death was the result of the automobile accident. The defendant company produced a pathologist who stated that, in his opinion, Gordon's death was the result of the decedent's intentional overexertion in attempting to extricate his car from the miry terrain. In disposing of the motions for judgment n.o.v. and new trial, the court below said: "Defendant's principal argument is that he had a better expert witness than the plaintiff had. Defendant's expert witness had testified that in his opinion the plaintiff's husband's death did not result 'directly and independently of all other causes from bodily injury effected solely through external, violent and accidental

means as evidenced by a visible contusion or wound on the exterior of the body.' . . . The Trial Judge had an opportunity to observe these witnesses on the stand and to take into consideration all of the other facts testified to by the witnesses for the parties and reached the conclusion that the plaintiff's expert witnesses were the more reliable, including the non-expert lay witnesses who testified to the happening of events before and up to the time of the death, including various foot prints and tire marks in the vicinity of the place where the decedent was found."

Our study of the record impels us to conclude that it supports the trial judge's conclusions.

The defendant argues that the contusions and injuries on the decedent's body were not the cause of the death of the decedent. In this respect the defendant misreads the condition in the policy. It does not say that the death must be the result of the wounds found on the exterior of the body. It merely notes that the wounds and contusions shall be *evidence* that the death was effected through "external, violent and accidental means." A person may be struck by a car and die as the result of internal injuries but the exterior of his body show only a broken finger. Certainly it could not be argued in such a case that the beneficiary of the insurance policy (like the one here involved) would have to prove that the broken finger caused the decedent's death.

At about midnight on the night of the accident Larry Gordon was seen, with a young lady not his wife, in a tavern where they drank a couple of beers, danced together and then left. There is no evidence that this young lady was with Gordon at the time of his death except a woman's purse found close to the car. But even if it were established that the lady was with Gordon at the time of the accident it is difficult to see the relevancy which the defendant attempts to draw from

that fact. It says, through counsel, rather far-fetchedly we cannot help but observe, that the fear Gordon may have felt in being discovered with a woman to whom he was not married could have been an emotional factor in killing him. Defendant's counsel argues that the circumstance of the young woman's companionship should have been included in the hypothetical questions put by plaintiff's counsel to the plaintiff's doctors. That a 21-year old youth should be literally frightened to death because he was with a woman not his legal spouse is simply an exaggeration which can lay no claim to verisimilitude.

Defendant's counsel finds fault in plaintiff counsel's hypothetical questions on other grounds, principally that they failed to include all the pertinent factors in the case. If the particular hypothetical question under fire was inadequate or unfair, it devolved upon defendant's counsel to object in such a manner to permit plaintiff's counsel to amend the question. Moreover, defendant's counsel had full opportunity to put his own hypothetical questions to the doctors. On this subject the Superior Court said in *Randolph v. Shannopin Coal Co.*, 142 Pa. Superior Ct. 389: "If opposing counsel are of the opinion that material facts are not included in a hypothetical question, they may incorporate those facts in questions asked on cross-examination, and may also frame questions involving a consideration of facts which they contend are established by the evidence."

Some of the evidentiary factors which defendant's counsel says should have been included in the hypothetical questions were before the court in the form of photographs which the doctors saw and could have incorporated in their knowledge of the background of the case. An expert's opinion may be predicated on "personal observation combined with assumed facts appearing in the evidence." *Jackson v. U. S. Pipe Line Co.*, 325 Pa. 436, 440.

Then the defendant says that the presence of a jack with the decedent's coat over it some 25 feet from the automobile supports the conclusion that the decedent died as the result of exertions caused by working around the car. This fact, together with all the other circumstances, were before the fact-finding tribunal and were duly considered. The conclusion reached by that tribunal encounters no adverse observation from this reviewing court.

Nor do we believe, as the defendant finally argues, that the verdict was against the weight of the evidence, entitling the defendant to a new trial.

Judgment affirmed.